UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER SEYBOLD, et al.,
Plaintiffs,

v.

HYATT CORPORATION,
Defendant.

Case No. 26-cv-02103-SVK

**ORDER ON MOTION TO COMPEL ARBITRATION**

Re: Dkt. No. 22

Plaintiffs bring this class action on behalf of persons employed by Defendant Hyatt Corporation ("Defendant" or "Hyatt") in the state of California for violations of various sections of the California Labor Code. The case was removed to the federal court of the Northern District of California on March 11, 2026. On July 10, 2026, Defendant filed a motion to compel arbitration of all claims in the Complaint. Dkt. 22. All Parties have consented to the jurisdiction of a magistrate judge. Dkts. 10-11. This matter is suitable for determination without oral argument. Civ. L.R. 7-1(b). Having carefully considered the Parties' briefs and the applicable legal standards, the Court **GRANTS** Hyatt's Motion to Compel Arbitration and dismisses Plaintiffs Alexa Villafranca ("Villafranca"), Mamello Malete ("Malete"), Eduardo Cruz ("Cruz") and Christopher Mata ("Mata") (collectively, "Arbitration Plaintiffs")[1] from the class action. However, the Court **DENIES** Hyatt's motion to dismiss the class claims; Plaintiff Christopher Seybold ("Seybold") can still litigate on behalf of the proposed class.

## I. BACKGROUND

### a. The Dispute

Seybold filed this class action lawsuit on behalf of himself and "all current and formerly

[1] When the Court is referring to all five named Plaintiffs, including Seybold, it refers to them simply as "Plaintiffs."

United States District Court
Northern District of California

hourly-paid and/or non-exempt employees who worked for Defendants[2] in the State of California at any time during the period from four years prior to [October 16, 2025]." Dkt. 1 at ¶ 1. He sues Defendant for violations of various sections of the California Labor Code and the applicable Industrial Welfare Commission Wage Order based on the following allegations:

- Failure "to properly pay all wages owed for all time worked (including minimum wages, straight time wages, and overtime wages),"
- Failure "to provide them with all meal periods and rest periods and associated premium wages to which they were entitled,"
- Failure "to timely pay them all wages due during their employment,"
- Failure "to timely pay them all wages due upon termination of their employment,"
- Failure "to provide them with accurate itemized wage statements," and
- Failure "to reimburse them for necessary business expenses."

*Id*. at ¶ 2-3. All violations allegedly occurred while Plaintiffs were employed at Carmel Valley Ranch ("CVR") in Monterey County, California. Dkt. 1 at 32 (specifically suing Hyatt Corporation dba Carmel Valley Ranch).

**b. Procedural Posture**

Seybold filed his original class action complaint in the Superior Court of California for the County of Monterey and a first amended complaint in the same court, adding as plaintiffs Villafranca, Malete, Cruz and Mata. Dkt. 1 at 3-4. On March 11, 2026, Hyatt filed its answer to the First Amended Complaint in Monterey County Superior Court and removed this action to federal court. *Id*. at 4 and 28. On July 10, 2026, Defendant filed its Motion to Compel Arbitration ("the Motion"). Dkt. 22. On August 7, Plaintiffs filed their opposition to the Motion. Dkt. 26. On August 21, 2026, Defendant filed its reply in support of the Motion making this matter ripe for determination. Dkt. 28.

///

///

---

[22] Seybold's initial complaint included as defendants Hyatt Corporation dba Carmel Valley Ranch and Does 1-25.



United States District Court
Northern District of California

**c. Parties**

**i. Hyatt**

The present dispute arises from the Plaintiffs' employment at Carmel Valley Ranch. In May of 2018, when Mata was presented with one of the arbitration agreements now at issue (the "Two Roads Agreement"), CVR was owned and operated by Two Roads Hospitality, LLC ("Two Roads"). Buenrostro Decl. at ¶ 10, Ex. A. Hyatt acquired Two Roads in November of 2018, assuming the management of CVR and all of Two Road's rights and obligations under its employment agreements. *Id.* at ¶¶ 4-7. In October of 2023, Hyatt rolled out a new employment agreement, entitled "Mutual Agreement to Arbitrate Pay and Privacy Disputes" (the "Pay and Privacy Agreement"), mandating that Hyatt and its employees arbitrate certain disputes. Buenrostro Decl. at ¶ 12. This mandatory arbitration agreement went into effect ten days after an informational meeting for those employed by Hyatt in and around October 2023 and at the time of hiring for later employees. Buenrostro Decl. at ¶¶ 21-22; Dkt. 22-1 at 17, 22, 27. The two agreements are discussed in more detail in section d below.

**ii. Seybold**

According to the Complaint, Seybold worked for Defendant from June 2021 to September 2022 as a Server Assistant. State FAC at ¶ 24 (Dkt. 1 at 73). It is uncontested that Seybold did not sign an arbitration agreement with Defendant or its predecessors. Dkt. 26 at 2-3; Dkt. 28 at 14.

**iii. Mata**

According to the Complaint, Mata worked for Defendant from January 2018 to June 2024 as a Server.[3] State FAC at ¶ 28 (Dkt. 1 at 73-74). At the time of Mata's hiring, CVR was operated by Two Roads Hospitality. Mata Decl. at ¶ 3. Before Mata's first day of work, Mata attended a full-day orientation where he was given an onboarding packet with 25-30 pages for him to review, fill out and sign. *Id.* at ¶¶ 4-7. According to Mata, his recollection is that the Two

---

[3] The Declaration of Christopher Mata ("Mata Decl."), in support of Plaintiffs' opposition to the Motion clarifies that Mata's employment dates were actually May 4, 2018 through June 29, 2023. Mata Decl., ¶ 2.

Roads Agreement was simply included in this packet of paperwork. *Id*. at 9. The terms of the Two Roads Agreement explicitly gave Mata 30 days to opt out of the Two Roads Agreement. Dkt. 22-1 at 9. Mata claims that specific terms of the agreement were never explained to him, including the opt-out provision; he "had never heard of arbitration and did not know what the term meant" until July 2026; "[h]e understood that he had to sign everything in the packet to start the job;" he thought he was unable to take the documents home to review before signing on the day of orientation and (4) "no one told him the Two Roads Agreement would continue to apply to him as an employee of Defendant." Mata Decl. at ¶¶ 9-16.

**iv. Malete**

According to the Complaint, Malete worked for Defendant from June 2024 to June 2025 as a Culinary Intern. State FAC at 26 (Dkt. 1 at 73); *see also* Declaration of Mamello Malete ("Malete Decl."), ¶ 2. Malete moved to the United States from South Africa specifically to work at Carmel Valley Ranch. Malete Decl. at ¶ 3. Malete entered the United States on a visa that, as she understood it, "depended on her employment with Defendant." *Id*. at ¶ 4. In addition to moving halfway across the globe, Malete accrued the following expenses before her first day of work: "$2400 in program fees, $400 in visa fees, $1200 for flights, and $1500 travel money to comply with U.S. regulations for travelers on a visa." *Id*. at ¶ 5. According to Malete, she was not presented with the Pay and Privacy Agreement until her first day of work, the document was one in a stack of required onboarding documents and nobody explained the Pay and Privacy Agreement to her. *Id* at ¶¶ 7-9. Like Mata, Malete further claims that she did not understand, and nobody explained, specific provisions of the agreement and that she did not know what the word "arbitration" meant until July 2026. *Id*. at ¶¶ 10-12. She also understood that, if she did not sign the agreement, she would not have a job. *Id*. at ¶ 12.

**v. Cruz**

According to the Complaint, Cruz has worked for Defendant since January 2017 as a Cook.[4] State FAC at ¶ 27 (Dkt. 1 at 73). The Parties dispute the circumstances under which Cruz

[4] The Declaration of Eduardo Cruz ("Cruz Decl."), in support of Plaintiffs' opposition to the Motion states that Cruz began his work at CVR around April 10, 2018. Cruz Decl., ¶ 2.

signed the Pay and Privacy Agreement. According to Cruz, he was called into the chef's office and presented with the Pay and Privacy Agreement without any explanation as to what it entailed. Cruz Decl. at ¶¶ 5-6. He further recounts feeling pressured to sign the Pay and Privacy Agreement because he needed the job and feeling rushed to sign because he was on the clock and the next employee was waiting to sign the same agreement. Cruz Decl. ¶¶ 5, 7-8. Defendant contests this account, claiming that "Cruz was given his Agreement in Spanish, at an informational meeting with a ten-day review period before it took effect." Dkt. 28 at 1. Cruz testifies that he does not remember such a meeting and that he believed he needed to sign the agreement to keep his job. Cruz Decl. at ¶¶ 4, 7. Like Mata and Malete, Cruz testifies that nobody explained certain provisions of the agreement and that he did not know what the word "arbitration" meant until July of 2026. *Id.* at ¶¶ 9-10.

**vi. Villafranca**

According to the Complaint, Villafranca worked for Defendants from November 2024 to February 2025 as Kitchen Hostess.[5] State FAC at 25 (Dkt. 1 at 73). Villafranca testifies that she completed her onboarding paperwork in one sitting, that arbitration was not specifically discussed with her, that she understood that she had to sign all the documents in her onboarding packet to get the job and that she did not think she was allowed to bring the paperwork home to review before signing. Villafranca Decl. at ¶¶ 4-7.

**d. Relevant Terms of Arbitration Agreements at Issue**

There are two arbitration agreements at issue, the Two Roads Agreement and Hyatt's Pay and Privacy Agreement. Relevant excerpts from each agreement are included below. Emphasis is taken from the original agreements.

**i. Two-Roads Agreement**[6]

**<u>Binding Arbitration</u>**. I hereby agree that any and all claims, disputes or

[5] The Declaration of Alexa Villafranca ("Villafranca Decl."), in support of Plaintiffs' opposition to the Motion, states that Villafranca worked at CVR from December 2024 to February 2025. Villafranca Decl. at ¶ 2.
[6] The agreement signed by Cruz is in Spanish. Defendants have included an English translation of his signed agreement, which matches the agreements signed by Malete and Villafranca except as indicated below.

> controversies between my "Employer" and me arising out of or relating in any way to my employment (or the termination thereof) shall be resolved by final, binding and confidential arbitration to the fullest extent allowed by law. For purposes of this Mutual Binding Arbitration Agreement, the term "Employer" shall mean Two Roads Hospitality, LLC and/or any related entity which is my employer or an entity related thereto, including, but not limited to, Commune Hotels and Resorts, Joie de Vivre Hospitality, Thopson Hotels, Tommie Hotels, and Two Roads Hospitality. This arbitration obligation shall apply to any and all claims, causes of action, in law or equity or any nature whatsoever, between Employer and/or its affiliated entities (including their owners, directors, managers, employees, agents and officers) and me which arises out of or is related in any way to my relationship with Employer and/or its affiliated entities. Except as otherwise required under applicable law, both I and Employer agree to bring claims only in our individual capacity, and not to bring claims in arbitration or otherwise on a class or representative basis.
>
> **Employer and I expressly waive the right to a jury trial, and Employer and I agree that the arbitrator's award will be final and binding on both parties.** The arbitrator shall have authority to award monetary damages and any and all other remedies that would be available in court, and the arbitrator's decision of whether or not to award such damages and remedies shall be based on the statute or common law upon which the arbitrated claim(s) is based.
>
> Employer will pay costs that unique to the arbitration process…I will pay any costs that would be imposed on me in a judicial forum, consistent with JAMS rules, and I understand that I will be responsible for retaining my own attorney.
>
> In accordance with this Agreement, and to facilitate good-faith negotiations, I agree to give written notice to the Senior Vice President of People Services for Two-Roads Hospitality stating the nature of my claim in sufficient detail to advice Employer of the nature of the dispute and the relief I requested. Employer agrees to do the same if it initiates any claim against me. I understand that this information will be used to investigate the claim, so that Employer and I can engage in good-faith negotiations to resolve it promptly.
>
> **Opt Out of Binding Arbitration Agreement**. I acknowledge that I have the opportunity to opt out of the arbitration portion of this Agreement. To do so, I must provide notice…specifically indicating that I have concerns with the arbitration portion of this Agreement, and do not wish to be bound by it. I understand that such notice must be provided within thirty days (30 days) of my receipt of this Agreement in order to opt out. I understand that the General Manger (or one of his/her designated representatives) may contact me to discuss my concerns. And finally, I understand that I will not be penalized in any manner for opting out of the Agreement.

Ex. A to Buenrostro Decl. (Dkt. 22-1 at 7-9).

**ii. Hyatt's Pay and Privacy Agreement**

> **You understand and agree that your continued employment with Hyatt as of November 3, 2023 is deemed acceptance of this Agreement. If you remain employed by Hyatt on or after November 3, 2023, this**

United States District Court
Northern District of California

> **<u>Agreement will apply to you as a condition of your continued employment with Hyatt.</u>**[7]
>
> <u>Agreement to Arbitrate.</u> You and Hyatt agree to use binding arbitration, instead of going to court, for Covered Claims (as defined below)….Except as noted below, the Covered Claims under this Agreement are any claims, asserted or unasserted, alleging underpayment or overpayment of wages, overtime, expenses, loans, reimbursements, commissions, advances, or any element of compensation, arising out of or based on claims of eligibility for overtime, on-the-clock work, off-the-clock work or other uncompensated hours worked claims, timing or amount of pay at separation, deductions of pay or paid time off, provision of meal or rest periods, repayment of loans or advances, pay statements, or any other claimed violation of wage-and-hour practices or procedures under local, state or federal statutory or common law, as well as claims arising out of or relating in any way to any retirement, bonus, incentive pay or deferred compensation benefit plan, whether or not the plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), including all retirement savings, stock purchase, deferred compensation, and incentive compensation plans, and claims alleging breach of privacy obligations, including but not limited to, claims alleging violations of requirements relating to biometric information or identifiers. Covered Claims do *not* include any claims that cannot be required to be arbitrated as a matter of law. Covered claims also do not include those in cases that are currently pending in any court brought by you or on your behalf. Only with Hyatt's consent may Covered Claims be joined with any excluded claims in court.
>
> **Both You and Hyatt understand and agree that arbitration is the only forum to address Covered Claims, and that the parties are waiving the right to a trial before a judge or jury in federal or state court in favor of arbitration.** The Arbitrator shall have the authority to award the same relief that would have been available in court pursuant to applicable law.
>
> <u>Waiver of Class and Collective Claims.</u> You and Hyatt also agree that Covered Claims will be arbitrated only on an individual basis, and not as part of a class, collective, or representative action. This means that you waive the right to bring, participate in, join, or receive money or any other relief from any class, collective, or representative proceeding. Without Hyatt's consent, an Arbitrator may not: (i) combine more than one individual's claim or claims into a single case; (ii) facilitate notification of others of potential claims; (iii) arbitrate any form of a class, collective, or representative proceeding; or iv) award relief not limited to the individual claimant.
>
> <u>Applicable Law.</u> This Agreement is made pursuant to and shall be governed under the Federal Arbitration Act. The same substantive laws that would apply to a claim filed in an appropriate court apply to claims in arbitration. The same remedies, limitations periods, and administrative prerequisites to filing a lawsuit apply to an arbitration demand.

---

[7] This specific provision is only found in Cruz's contract. The comparable provision for Malete and Villafranca, found in the middle of § 1, states, "Your acceptance of an offer of employment with Hyatt is acceptance of this agreement." *See, e.g.*, Dkt. 22-1 at 22, 27. Those provisions are not bold or underlined.

> Changes to this Agreement. Hyatt and you may enter into a revised agreement in writing with immediate effect if signed by both parties (only Hyatt's SVP Human Resources – Americas shall have the authority to enter into a revised agreement on Hyatt's behalf). In addition, you understand and agree that, except as may be required by applicable law, Hyatt may change or terminate this Agreement after giving you 30 calendar days' written or electronic notice, but such change or termination shall not apply to a pending claim. Any such amendments may be made by publishing them to employees and shall be effective 30 calendar days after notice of such amendments are provided to employees. Your continuation of employment after receiving such amendments shall be deemed acceptance of the amended terms.

Exs. B-E to Buenrostro Decl. (Dkt. 22-1 at 10-30).

## II. LEGAL STANDARD: FEDERAL ARBITRATION ACT

The Federal Arbitration Act ("FAA") applies to written contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2; *see also Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 111-12 (2001). Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "both a liberal federal policy favoring arbitration [] and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citations omitted).

A court must determine two "gateway" issues in assessing whether to compel arbitration: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). To be enforceable, an arbitration agreement encompassing unwaivable statutory claims must contain certain minimum requirements so that an employee who signs such an arbitration agreement may effectively adjudicate his or her statutory claims through the arbitration process. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 96-97 (2000). Specifically, the arbitration agreement must: (1) provide for a neutral arbitrator; (2) allow for all remedies otherwise available in court; (3) provide for more than minimal discovery; (4) require a written award; and (5) not require the employee to pay unreasonable arbitration forum costs. *Id*.

District courts use the summary judgment standard when ruling on a motion to compel arbitration. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). The party

seeking to compel arbitration bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. *Johnson v. Walmart, Inc.*, 57 F.4th 677, 681 (9th Cir. 2023). In evaluating the record, the Court must "give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 517 (9th Cir. 2023) (citations omitted).

If the Court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the [C]ourt shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. But "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." *Id.*

"The final clause of § 2 [of the FAA], generally referred to as the savings clause, permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (citation omitted).

Should a court find a particular clause to be unconscionable, it is to apply "[t]he basic principles of severability that emerge from Civil Code section 1599." *Armendariz*, 24 Cal. 4th at 124. Specifically, the court is to evaluate the central purposes of a contract at issue, and "[i]f the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced." *Id.* However, "[i]f the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." *Id.*; *see also* Section 1599 ("Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest.").

## III. ARGUMENT

### a. The Arbitration Plaintiffs Signed Arbitration Agreements That, By Their Terms, Cover the Claims at Issue

As a preliminary matter, the Court must evaluate two gateway issues: whether there is an

agreement to arbitrate between two parties and whether the agreement covers the dispute. *Brennan*, 796 F. 3d at 1130. Here, there is no dispute that the Arbitration Plaintiffs all signed agreements with either Two Roads or Hyatt that, if valid, bind both parties to arbitration for certain claims that would otherwise be available in court. *See* Dkt. 22-1; Mata Decl.; Cruz Decl., Malete Decl., Villafranca Decl. (arguing unconscionability, not authenticity of the signatures). There is also no dispute that, if these agreements are valid, they cover the dispute at issue in this litigation, which raises claims alleging violations of various wage and labor laws. *Id.*; Dkt. 22-1 at 8 ("The arbitration obligation shall apply to any and all claims, causes of action, in law or equity of any nature whatsoever, between Employer and/or its affiliated entities…and me which arises out of or is related to in any way to my relationship with Employer and/or its affiliated entities."); 17 ("the Covered Claims under this Agreement are any claims…alleging underpayment…of wages, overtime, expenses, loans, reimbursements…or any element of compensation, arising out of or based on claims of eligibility for overtime, on-the-clock work, off-the-clock work or other uncompensated hours worked claims, timing or amount of pay at separation…provision of meal or rest periods…or any other claimed violation of wage-and-hour practices or procedures under local, state or federal statutory or common law…"); 22 (same); 27 (same). Absent a defense invalidating any of these contracts, the Arbitration Plaintiffs must be compelled to arbitrate their claims. 9 U.S.C. § 4.

**b. Hyatt Is Qualified to Enforce the Two Roads Agreement Under Theories of Successor Employer and Equitable Estoppel But Not As a Third-Party Beneficiary**

Plaintiff argues that Hyatt cannot enforce the Two Roads Agreement against Mata because Hyatt was not a signatory to the agreement. "Because arbitration is a matter of contract, generally, 'one must be a party to an arbitration agreement to be bound by it or invoke it.'" *DMS Services, Inc*. (2012) 205 Cal.App.4th 1346, 1352 (citing *Molecular Analytical Systems v. Ciphergen Biosystems LLC* (2010) 186 Cal.App.4th at 705). Code of Civil Procedure section 1281.2, which allows a party to petition to compel arbitration, assumes that such "arbitration will be between the signatories to the agreement." *Marenco v. DirecTV LLC*, 233 Cal. App. 4th 1409, 1416 (2015)

(citing *Thomas v. Westlake* (2012) 204 Cal.App.4th 605, 614, fn. 6). "[A] litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)). In California, "Nonsignatory defendants may enforce arbitration agreements 'where there is sufficient identity of parties.'" *Marenco*, 233 Cal. App. 4th at 1417 (citing *Valley Casework, Inc. v. Comfort Construction, Inc.* (1999) 76 Cal.App.4th 1013, 1021).

Defendant presents three theories for why Hyatt should be allowed to enforce the Two Roads Arbitration Agreement despite its nonsignatory status: successor employer, equitable estoppel, and third-party beneficiary.

**i. Successor Employer**

First, Defendant argues Hyatt can enforce the Two Roads Agreement as a successor employer. In California, a non-signatory employer may equitably enforce an arbitration agreement where it "acquired all of [the signatory's] assets, employees, rights, and liabilities" and "[t]here is no indication that the original terms of ... employment were modified, superseded, revoked, cancelled, or nullified in any manner." *Marenco*, 233 Cal. App. 4th at 1420 (holding defendant-in-interest could enforce arbitration agreement between employee and predecessor company); *see also Jenks v. DLA Piper Rudnick Gray Cary US LLP*, 243 Cal. App. 4th 1, 3 (2015) (holding a successor by merger to an arbitration agreement may compel arbitration); *Hart v. Charter Communs., Inc.*, 814 F. App'x 211, 214 (9th Cir. 2020) ("As TWC's successor-in-interest, Spectrum has the authority to enforce the arbitration agreement between Hart and TWC"); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 551 (1964) (enforcing union's arbitration agreement signed by corporate employer against entity with which employer merged).

In support of this theory, Defendant's declarant states that when Hyatt acquired Two Roads in 2018, "Hyatt became Mata's employer and assumed all the rights and obligations arising from Two Roads Hospitality's employee relationships, including the Arbitration Agreements with CVR employees." Buenrostro Decl. at ¶¶ 5, 10, Ex. A. This assumption of all rights and obligations, absent any indication of changes to the terms of Mata's employment, supports the

conclusion that, at the time of its acquisition of Two Roads, Hyatt intended to maintain the existing employment terms with Two Roads employees, including Mata, and that Mata's choice to continue working at CVR after the acquisition was implied acceptance of the continuation of these terms. *Marenco*, 233 Cal. App. 4th at 1420 (citing *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*, 55 Cal. 4th 223, 236-246 (2012) (continued employment constitutes acceptance of arbitration agreement proposed by successor employer)).

**ii. Equitable Estoppel**

Second, Defendant argues Hyatt can enforce the Two Roads Agreement against Mata under a theory of equitable estoppel. In support of its equitable estoppel theory, Defendant cites to the nature of Mata's claims. Under the doctrine of equitable estoppel, a nonsignatory to an arbitration agreement may compel arbitration where the signatory's claims are "intimately founded in and intertwined" with the underlying contract obligations. *Kramer,* 705 F.3d at 1128. "In such instance, the plaintiff may be equitably estopped to deny the nonsignatory defendant's right to enforce an arbitration clause that is contained within the contract that the plaintiff has placed at issue." *Marenco*, 233 Cal. App. 4th at 1417. For example, at least one California court has found that, "by suing his employer for unpaid wages, [the plaintiff] acknowledged the existence of an employment relationship with [the defendant,] the entity that survived the merger," and the defendant is "entitled to invoke the arbitration clause to compel [the plaintiff], as a signatory [], to arbitrate his claims pursuant to the employment agreement." *Marenco*, 233 Cal. App. 4th at 1419. There is no dispute that Mata's claims are directly related to his employment at CVR. Dkt. 22 at 15; Dkt. 26 at 10-11. Hyatt, as his employer during the relevant time period, can enforce the Two Roads Agreement against Mata.

**iii. Third-Party Beneficiary**

Third, Defendant argues Hyatt can enforce the Two Roads Agreement as a third-party beneficiary. Under California law, a non-signatory is a third-party beneficiary only to a contract "made expressly for [its] benefit." *Ngo v. BMW of N. Am., LLC*, 23 F.4th 942, 946 (9th Cir. 2022); Cal. Civ. Code § 1559. A non-signatory seeking to enforce a contract as a third party beneficiary must establish that the "'express provisions of the contract,' considered in light of the



United States District Court
Northern District of California

'relevant circumstances,' show that (1) 'the third party would in fact benefit from the contract;' (2) 'a motivating purpose of the contracting parties was to provide a benefit to the third party;' and (3) permitting the third party to enforce the contract 'is consistent with the objectives of the contract and the reasonable expectations of the contracting parties.'" *Id.* (quoting *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 830 (2019)). In support of its theory, Defendant argues that "Hyatt…falls within the class of persons or entities for whom the Agreement was intended" because Two Roads' "affiliated entities" includes its "owners, directors, managers, employees, agents and officers." Dkt. 22 at 15 (citing Buenrostro Decl. at ¶ 10, Ex. A).

However, the terms of the agreement suggest that Two Roads did not enter into the Two Roads Agreement with Mata with the intent that it would benefit its successors. A non-signatory cannot enforce a contract when a list of beneficiaries to the contract names others, expressly or categorically, but not the non-signatory. *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1234 (9th Cir. 2013) (finding that Best Buy could not enforce arbitration agreement where third-party beneficiary provision listed TiVo, Inc. but not Best Buy). This rule stems from well-established tenants of contract interpretation in California, specifically: "the rule of construction expressio unius est exclusio alterius; i.e., that mention of one matter implies the exclusion of all others' is 'an aid to resolve the ambiguities of a contract." *Id.* (citing *Steven v. Fid. & Cas. Co. of New York*, 58 Cal. 2d 862 (1962)).

"Employer" is defined in the "Two Roads Agreement" as "Two Roads Hospitality, LLC and/or any related entity which is my employer or an entity related thereto, including, but not limited to, Commune Hotels and Resorts, Joie de Vivre Hospitality, Thompson Hotels, Tommie Hotels, and Two Roads Hospitality." Dkt. 22-1 at 8. The list includes several entities, none of which suggest successors. *Cocom v. ABM Aviation, Inc.*, 179 F.4th 1168, 1175 (9th Cir. 2026) ("where specific words follow general words in a contract, the general words are construed to embrace only things similar in nature to those enumerated by the specific words."). While Defendant points to the obligation applying to "affiliated entities" and the "owners, directors, managers, employees, agents and officers" of the "affiliated entities," the Two Roads Agreement itself is between Mata and his "Employer," who, according to the aforementioned list, no longer

United States District Court
Northern District of California

exists; Hyatt was neither Mata's "Employer" nor an "affiliated entity" of Mata's "Employer" at the time of the contract. Dkt. 22-1 at 8. In light of this, Defendant has failed to show at least that "a motivating purpose of the contracting parties was to provide a benefit to the third party." *Ngo*, 23 F.4th at 946 (quoting *Goonewardene*, 6 Cal. 5th at 830).

Therefore, while the Court finds the Two Roads Agreement is enforceable by Hyatt, it is not enforceable under the theory that Hyatt was intended as a third-party beneficiary at the signing of the contract.

**c. Both Contracts Are Governed by the FAA and Contain All the Required Elements for a Binding Arbitration Agreement**

**i. Two Roads Agreement**

The Two Roads Agreement is governed by the FAA because it is a written contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. CVR catered to interstate travelers, used vendors across the United States and hired employees from throughout the United States, and internationally, even before prior to its acquisition by Hyatt. Buenrostro Decl. at ¶¶ 26-28; *see also Khalatian v. Prime Time Shuttle, Inc.,* 237 Cal. App. 4th 651, 658 (2015) (employer's arbitration agreement was governed by the FAA because "passengers using the employer's service often traveled from other states"); *Saint Agnes Med. Ctr. v. PacifiCare of Cal.,* 102 Cal. App. 4th 647, 651 (2002) (contractual relation with vendors operating on a national or interstate basis qualifies as involvement in interstate commerce). Thus, the Two Roads Agreement is tied to interstate commerce and is governed by the FAA.

The Two Roads Agreement otherwise contains all the essential elements of a valid arbitration agreement. Specifically, the Two Roads Agreement provides for a "neutral arbitrator selected by both parties" through JAMS. Dkt. 22-1 at 8. "The arbitrator shall have authority to award monetary damages and any and all other remedies that would be available in court." *Id.* at 9. The Two Roads Agreement follows JAMS rules and "require[s] adequate discovery by both parties prior to the arbitration." *Id.* at 8. The Two Roads Agreement further provides that the arbitrator "will issue a written decision" and "Employer will pay costs that are unique to the arbitration process." *Id.* at 9. Thus, the Two Roads Agreement satisfies the basic requirements to form a valid arbitration agreement.

**ii. Pay and Privacy Agreement**

The Pay and Privacy Agreement explicitly states that "[t]his Agreement is made pursuant to and shall be governed under the Federal Arbitration Act." Dkt. 22-1 at 18, 23, 28. Moreover, the Pay and Privacy Agreement provides for a neutral arbitrator, Federal Arbitration, Inc. and allows for the same remedies available in litigation. *Id*. ("The same remedies, limitations periods, and administrative prerequisites to filing a lawsuit apply to an arbitration demand."). While the scope of discovery allowed by the Pay and Privacy Agreement is narrower than that allowed in litigation, electronic information may be allowed if there is a "compelling need," each party is automatically entitled to 30 written discovery requests, and each party is allowed three eight-hour days of depositions, which some courts have found to amount to more than minimal discovery, especially in wage cases. *Id*. at 19-20, 24-25, 29-30. The Arbitrator also "may allow additional discovery upon a showing of need in order to adequately pursue a claim or defense." *Id*.; *see also CarMax Auto Superstores California LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1109 (C.D. Cal. 2015) (providing for initial disclosures, twenty interrogatories, three oral depositions, and additional discovery if a party shows "substantive need" for it, "Numerous courts have found that similar—and in some cases, identical—discovery provisions provide sufficient discovery and have held that the DRRP does not unfairly or unconscionably limit a party's ability to conduct discovery in order to prove its case."). The Pay and Privacy Agreement follows the general laws for arbitration, including a written decision, and provides that any fee exceeding $400 for filing and all fees unique to arbitration will be covered by Hyatt. *Id*. at 19, 24, 29.

d. **Both Arbitration Agreements Are Conscionable**

Unconscionability has a procedural and a substantive element, weighed on a sliding scale: the more is present of one, the less of the other is required. *Armendariz*, 24 Cal. 4th at 114. However, both forms of unconscionability must be present in some amount "for the court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Stirlen v. Supercuts*, 51 Cal.App.4th 1519, 1533 (1997). The party opposing arbitration bears the burden to demonstrate unconscionability. *Sonic–Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109, 1148 (2013).

Although the Court finds elements of procedural unconscionability surrounding the signing of both the Two Roads Agreement and the Pay and Privacy Agreement due to their adhesive nature and elements of oppression, the Court ultimately finds both agreements to be conscionable because they lack elements of surprise and substantive unconscionability.

**i. Both Contracts Are Substantively Conscionable**

"[T]he paramount consideration in assessing [substantive] conscionability is mutuality." *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1281 (2004) (quoting *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 657 (2004)). Substantive unconscionability "looks beyond the circumstances of contract formation and considers 'the fairness of an agreement's actual terms…'" *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 493 (2024) (quoting *Pinnacle*, 55 Cal. 4th at 246).

An arbitration agreement is substantively unconscionable only if it is "so one-sided as to shock the conscience." *Walnut Producers of Cal. v. Diamond Foods, Inc.*, 187 Cal. App. 4th 634, 647-48 (2010). The most important consideration is whether the parties are provided equal rights. *Armendariz*, 24 Cal. 4th at 117 (holding that arbitration agreements must contain a "modicum of bilaterality").

**1. Two Roads Agreement**

Plaintiffs' argument that the Two Roads Agreement is substantively unconscionable rests on an argument that the Two Roads Agreement "contains an unlawful wholesale waiver of PAGA claims." Dkt. 26 at 27. This contention relies on the following sentence in the Two Roads Agreement: "Except as otherwise required under applicable law, both I and Employer agree to bring claims only in their individual capacity, and not to bring claims in arbitration or otherwise on a class or representative basis." Dkt. 22-1 at 8. However, "[e]xcept as otherwise required under applicable law" writes in an exception for PAGA cases, which – by law – cannot be waived by an arbitration agreement. As discussed below, class action waivers are lawful. Thus, this provision does not make the Two Roads Agreement substantively unconscionable.

Even were this provision unconscionable on its own, it is not so intertwined with the purpose of the Two Roads Agreement that it could not be severed from the rest of the lawful

agreement. *See Armendariz*, 24 Cal. 4th at 124-25. The Court is not convinced that the reference to "representative" claims improperly prevents employees from raising PAGA claims in court, but even were that the case, the Court is convinced that such a provision would be collateral to the main purpose of the contract – to properly bind employees to arbitration for most employment disputes – and therefore such a provision would be severable.

**2. The Pay and Privacy Agreement**

The Pay and Privacy Agreement is substantively conscionable because the terms, which almost all apply equally to both parties, are not "so one-sided as to shock the conscience." *Walnut Producers of Cal.*, 187 Cal. App. 4th at 647-48; *see also Armendariz*, 24 Cal. 4th at 120 (finding unconscionable an arbitration agreement that "require[d] the arbitration of employee—but not employer—claims arising out of a wrongful termination."). Substantive unconscionability may also arise where an arbitration agreement signed by an employer and employee specifically carves out claims that are more likely to be initiated by the employer than the employee. *See, e.g.*, *Ly v. Tesla, Inc.*, 757 F. Supp. 3d 1033, 1047-48 (N.D. Cal. 2024) (finding unconscionable a provision allowing the employer to obtain an injunction without having to post bond); *Farrar v. Direct Com., Inc.*, 9 Cal. App. 5th 1257, 1273 (2017) ("several courts have concluded a complete carve-out for confidentiality-related claims results in unfair one-sidedness," pointing to patent infringement and anticompetitive covenants); *Ramirez.*, 16 Cal. 5th at 498 ("lack of mutuality is indicative of substantive unconscionability," particularly where an agreement excludes from arbitration claims most likely to be initiated by an employer, such as those relating to intellectual property rights, noncompete agreements, theft, or embezzlement). However, even an express exclusion of categories of claims may not be fatal. *Correa v. Firestone Complete Auto Care*, 2013 WL 6173651, at *3 (N.D. Cal. Nov. 25, 2013) ("Correa is correct that the EDR Plan is not fully bilateral due to its exclusion of trade secret and non-compete claims. However, because business justification exists for those exclusions, the Court finds that the substantive unconscionability is minimal."). Slightly uneven terms, even in adhesive arbitration agreements, are allowed so long as "an employer with superior bargaining power" does not "impose arbitration on the employee as plaintiff [without] accept[ing] such limitations when it seeks to prosecute a claim against the

employee" absent justification for such one-sidedness. *Armendariz*, 24 Cal. 4th at 117.

The Pay and Privacy Agreement identifies the Covered Claims as follows:

> underpayment or overpayment of wages, overtime, expenses, loans, reimbursements, commissions, advances, or any element of compensation, arising out of or based on claims of eligibility for overtime, on-the-clock work, off-the-clock work or other uncompensated hours worked claims, timing or amount of pay at separation, deductions of pay or paid time off, provision of meal or rest periods, repayment of loans or advances, pay statements, or any other claimed violation of wage-and-hour practices or procedures under local, state or federal statutory or common law, as well as claims arising out of or relating in any way to any retirement, bonus, incentive pay or deferred compensation benefit plan, whether or not the plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), including all retirement savings, stock purchase, deferred compensation, and incentive compensation plans, and claims alleging breach of privacy obligations, including but not limited to, claims alleging violations of requirements relating to biometric information or identifiers.

Dkt. 22-1 at 17, 22, 27.

Plaintiffs argue that the agreement is one-sided because the Covered Claims are most likely to be brought by the employee. Dkt. 26 at 15-16. More particularly, Plaintiffs assert that the types of claims listed are "almost entirely [] claims only an employee would bring - in fact, most of them are claims a corporation cannot even accrue," Dkt. 26 at 16. However, there is no express exception to the arbitration requirement for any Covered Claim brought by Hyatt, and Plaintiffs have not identified claims that Hyatt might bring against its employees that would not be covered by the Pay and Privacy Agreement. *See Armendariz*, 24 Cal. 4th at 120; *Farrar*, 9 Cal. App. 5th at 1273; *Ramirez.*, 16 Cal. 5th at 498. In fact, the Pay and Privacy Agreement's list of Covered Claims could well include claims asserted by Hyatt against an employee, such as claims arising out of overpayment of wages, fraudulent reimbursement or repayment of loans. Even those claims that may only be brought by an employee (e.g., underpayment of wages, provision of meal or rest periods, violations of biometric information or identifiers, etc.) do not indicate a separation of an entire category of transactions or occurrences into employer and employee claims, only some of which are subject to mandatory arbitration. *See* Dkt. 22-1 at 17, 22, 27; *Ramirez*, 16 Cal. 5th at 498; *Armendariz*, 24 Cal. 4th at 120. Unlike in cases where courts have found substantive unconscionability based on lists of covered claims that require arbitration for an employee but not an employer, there is no list of claims brought by Hyatt that are exempted from

arbitration. *See Farrar*, 9 Cal. App. 5th at 1273. Therefore, the list of Covered Claims found in the Pay and Privacy Agreement is sufficiently mutual so as not to "shock the conscience." *Walnut Producers of Cal.*, 187 Cal. App. 4th at 647-48

Plaintiffs further argue that certain provisions in the Pay and Privacy Agreement are unconscionable because only Hyatt can initiate them. First, Plaintiff argues that the "Internal Dispute Resolution" process is "incredibly burdensome" and "absurd" and suggests it provides Hyatt with a sneak peek at facts and arguments that an employee will later raise in arbitration. Dkt. 26 at 18-19. However, the wording in the Pay and Privacy Agreement is "both Hyatt and you must raise concerns with each other and attempt to resolve any concerns before filing for arbitration." Dkt. 22-1 at 17-18, 22-23, 27-28. At each step in the process, the party asserting the Covered Claim (the "Claimant") and the responding party (the "Respondent") are bound by the same process, regardless of whether the Claimant is Hyatt or an employee. Dkt. 22-1 at 18, 23, 28.

Plaintiff's similar arguments about alleged one-sidedness in the decision to consolidate claims also fall short. For example, the provision requiring the consent of Hyatt before an arbitrator combines multiple cases into one proceeding does not give Hyatt the unilateral option to aggregate claims; it allows Hyatt the option to agree to an arbitrator's determination to consolidate claims. Dkt. 22-1 at 9, 24, 29 ("For discovery purposes only, an Arbitrator may – with Hyatt's consent only – consolidate claims filed by multiple individual employees…so long as the Arbitrator does not certify…a collective, class, or representative action."). Similarly, the portion of Section 1 cited by Plaintiffs to support unilateral powers of consolidation only applies to the narrow category of cases where some claims must be allowed in court. *Id.* at 17, 22, 27 ("Only with Hyatt's consent may Covered Claims be joined with any excluded claims in court."). This does not manifest the extreme one-sidedness suggested by Plaintiffs.

As Plaintiffs argued under the Two Roads Agreement, Plaintiffs further argue that the Pay and Privacy Agreement contains an unconscionable PAGA waiver. Unlike the Two Roads Agreement, the Pay and Privacy Agreement states that "you waive the right to bring, participate in, join, or receive money or any other relief from any class, collective, or representative

proceeding" without any exceptions. Dkt. 22-1 at 18, 23, 28. The Court follows other courts in this District that have held similar provisions that inherently preclude representative PAGA claims to be "unconscionable but severable." *Go v. Alclear, LLC*, No. 25-CV-08216-LB, 2026 WL 63579, at *6 (N.D. Cal. Jan. 8, 2026) ("The provision requiring that all relief be on an individual basis (precluding a representative PAGA claim) is unconscionable but severable, and the remaining provisions are not unconscionable."). As discussed above with respect to the Two Roads Agreement, such a provision would be collateral to the main purpose of the contract – to properly bind employees to arbitration for general pay and privacy disputes – and therefore such a provision would be severable.

Thus, the Court finds that the Pay and Privacy Agreement, severing its provision precluding representative PAGA claims, is substantively conscionable.

**ii. Procedural Unconscionability**

Procedural unconscionability is based on the circumstances surrounding contract negotiation and formation, "focusing on oppression or surprise due to unequal bargaining power." *Pinnacle*, 55 Cal.4th at 246, (citing *Armendariz*, 24 Cal.4th at 114). "Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice, while surprise involves the extent to which the terms of the bargain are hidden in a prolix printed form drafted by a party in a superior bargaining position." *Capili v. Finish Line, Inc.*, 116 F. Supp. 3d 1000, 1005 (N.D. Cal. 2015), aff'd, 699 F. App'x 620 (9th Cir. 2017) (citing *Serpa v. California Surety Investigations, Inc.*, 215 Cal.App.4th 695, 703 (2013)) (internal quotation marks omitted); *see also Villa Milano Homeowners Assn. v. Il Davorge*, 84 Cal. App. 4th 819, 828-29 (2000) (arbitration language that appeared in regular typeface on the 67th page of 70-page document was a "surprise" to party opposing arbitration—"[t]he arbitration clause was decidedly well-buried in a heap of paper.")

The Court looks to different factors to determine whether a contract, such as an arbitration agreement, is procedurally unconscionable. Certain types of contracts are so pervasive in today's society that courts have already determined how certain inherent factors affect this analysis. One common type of arbitration agreement is a contract of adhesion. *Armendariz,* 24 Cal.4th at 114.

A contract of adhesion is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Id.* at 113. "Under California law, a contract of adhesion has an element of procedural unconscionability because it is 'presented on a take-it-or-leave-it basis and [is] oppressive due to an inequality of bargaining power that result[ed] in no real negotiation and an absence of meaningful choice.'" *Capili*, 116 F. Supp. 3d at 1005 (citing *Nagrampa v. MailCoups Inc.,* 469 F.3d 1257, 1281 (9th Cir.2006)).

However, the Supreme Court has clarified that "[m]ere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991). Courts in California have confirmed that, under California law, the fact that an employee was required to sign an arbitration agreement to obtain or retain employment does not automatically invalidate the agreement. *Lagatree v. Luce, Forward, Hamilton & Scripps*, 74 Cal. App. 4th 1105, 1127-28 (1999) (affirming employer's discharge of employee who refused to sign arbitration agreement: "under both federal and state law, an employee's rights to a jury trial and a judicial forum can be validly waived by agreement, even where the waiver is required as a condition of employment.")

### 1. Mata's Signing of the Two Roads Agreement was Procedurally Conscionable

Plaintiffs argue that the circumstances surrounding Mata's signing of the Two Roads Agreement amount to oppression and surprise under California law. Dkt. 26 at 26. At least one court in this District has found pre-drafted contracts presented to employees on a "take-it-or-leave-it" basis to be contracts of adhesion. *Ly*, 757 F. Supp. 3d at 1042 (quoting *Baltazar v. Forever21, Inc.*, 62 Cal. 4th. 1237 1244 (2016), "Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced, contain a degree of procedural unconscionability even without any notable surprises, and bear within them the clear danger of oppression and overreaching."). Like the Pay and Privacy Agreement, discussed below, and for similar reasons, the Two Roads Agreement has elements of adhesion because it was presented on a take-it-or-leave-it basis. *Ly*, 757 F. Supp. 3d at 1042.

However, unlike the Pay and Privacy Agreement, the Two Roads Agreement includes an opt-out provision, allowing Mata to continue his employment with Two Roads whether or not he signed the agreement. Dkt. 22-1 at 9 ("I understand that I will not be penalized in any manner for opting out of the Agreement."). Despite Mata's contention that no one informed him that he could opt out of the agreement (Mata Decl. at ¶ 13), this opt-out provision is one of two labeled paragraphs of the two-page agreement that is bolded and underlined; it is also found right above signature line (Dkt. 22-1 at 9). Despite Mata's contention that "[n]o one told him that signing meant giving up a jury or the right to go to court" (Mata Decl. at 12), the following sentence is bolded for emphasis: "**Employer and I expressly waive the right to a jury trial, and Employer and I agree that the arbitrator's award will be final and binding on both parties**" (Dkt. 22-1 at 9).[8] The fact that the Two Roads Agreement was presented on two pages in a stack of 25-30 pages of an onboarding packet during a full-day orientation (Mata Decl. at 4-7) does not resemble the arbitration agreements found to be hidden by certain courts. *Ly*, 757 F. Supp. 3d at 1044 (citing *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 128 (2019) (distinguishing, as containing no surprise, a provision made in normal sized text and separated into paragraphs from one found to be "drafted with an aim to thwart, rather than promote, understanding" because the surprise provision was "'a paragon of prolixity, only slightly more than a page long but written in an extremely small font' with sentences that were 'complex' and 'filled with statutory references and legal jargon.'").

**2. The Signing of the Pay and Privacy Agreement Included Moderate to High Levels of Procedurally Unconscionability as to Cruz, Malete, and Villafranca[9]**

Plaintiffs first argue that the Pay and Privacy Agreement is adhesive. As discussed above with respect to the Two Roads Agreement a pre-drafted contract presented to employees on a

[8] Mata similarly contends that he "had never heard of arbitration and did not know what the word meant until he discussed it with Plaintiffs' counsel in July 2026." Mata Decl. at ¶ 11. However, this fact cannot support a finding of surprise and/or oppression on its own because an employer "has no affirmative obligation to ensure [their employee] understood all aspects of the Arbitration Provision or to suggest that she seek advice of counsel." *Ly*, 757 F. Supp. 3d at 1044.

[9] Malete and Cruz testify that they did not know what "arbitration" meant until their lawyers explained it to them in July of 2026. However, this argument, which was similarly presented for Mata, fails for the same reasons. *Supra*, fn. 8; *Ly*, 757 F. Supp. 3d at 1044.

"take-it-or-leave-it" basis can be a contract of adhesion. *Ly*, 757 F. Supp. 3d at 1042. However, if a court finds that a contract is adhesive, "the court must then determine whether other factors are present which, under established legal rules—legislative or judicial—operate to render it [unenforceable]." *Id.* (citing *Armendariz*, 24 Cal. 4th at 113). "[A]dhesion is an important factor in the procedural unconscionability analysis and may trigger the requirement for "closer scrutiny ... of [the] overall fairness" of the contract. *Id.* at 1043 (citing *Swain*, 57 Cal. App. 5th at 68, 270 Cal.Rptr.3d 786 (quotations omitted)). Not only was the Pay and Privacy Agreement presented on a "take-it-or-leave-it" basis, but continued employment with Hyatt or acceptance of a job offer was considered acceptance of the agreement. Dkt. 22-1 at 11, 17, 22, 27. The Court finds that the Pay and Privacy Agreement is adhesive and carries elements of procedural unconscionability.

Plaintiffs next argue that the Pay and Privacy Agreement was procedurally unconscionable because Malete was only given the agreement after she had moved to the United States on a Defendant-sponsored visa. Dkt. 26 at 21. "When an employer makes signing an agreement a condition of applying for employment, 'the economic pressure exerted ... on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement.'" *Ronderos v. USF Reddaway*, *Inc*., 114 F.4th 1080, 1090 (9th Cir. 2024) (citing *Armendariz*, 24 Cal. 4th at 114). Malete testifies that she was never shown a copy of the Pay and Privacy Agreement or told about it before her first day of work, which happened after she spent thousands of dollars moving to the United States. *Id*. at ¶¶ 3, 7-9. Defendant does not contest this. Moreover, because her lawful presence in the United States was tied to her employment with Hyatt, Malete felt she had no choice but to sign the Pay and Privacy Agreement. Malete Decl. at ¶¶ 4, 7-8. The Court finds that it is reasonable to presume that Malete was under a particularly acute pressure to sign and that she did not feel she could refuse and make the choice to quit the job rather than signing the Pay and Privacy Agreement. Therefore, the Court finds that Malete signed the Pay and Privacy Agreement under oppressive circumstances and that this process presented high levels of procedural unconscionability.

Plaintiffs then argue that the process of signing the Pay and Privacy Agreement created

United States District Court
Northern District of California

oppression and surprise for Cruz and Villafranca. Dkt. 26 at 21. The Court disagrees.

Cruz describes being called into the chef's office in the middle of his shift and feeling rushed to sign so he could get back to work and the next employee could enter to sign the agreement. Cruz Decl. at ¶¶ 5, 8. While this hurried signing might be oppressive if it were Cruz's only exposure to the Pay and Privacy Agreement, Buenrostro, director of Human Resources at CVR in October 2023, testifies that "Hyatt prepared and presented a PowerPoint presentation to employees at [a rollout meeting in October 2023], designed to answer a series of expected questions employees might have." Buenrostro Decl. at ¶ 15. To demonstrate her knowledge of these specific events, she testifies that she "attended many of these arbitration roll out meetings for various groups of colleagues, including the October 24, 2023, roll out meeting that Cruz attended." *Id*. at ¶ 16. She further testifies that "[e]mployees at the October 24, 2023, meeting, including Cruz, were specifically told verbally and in writing that they would be deemed to have accepted the arbitration agreement if they remained employed on or after November 2, 2023." *Id*. at ¶ 22. It is undisputed that the agreement signed by Cruz is in Spanish, his primary language. Ex. B to Buenrostro Decl. (Dkt. 22-1 at 11-15).

Similarly, in contrast to Villafranca's testimony that the Pay and Privacy Agreement was presented along with a stack of other onboarding documents, Buenrostro testifies that the agreement "is a standalone document, presented to all new employees separate from any other onboarding materials and all new hires, including [] Villafranca, are afforded the opportunity to review the terms…and ask questions before signing." Dkt. 22-1 at 14. The fact that Buenrostro was not present when Villafranca signed the agreement lessens the weight the Court places on her testimony of what was or was not actually said to Villafranca at onboarding. *Beco v. Fast Auto Loans, Inc.*, 86 Cal. App. 5th 292 (2022) (discounting the employer's statement that "all employees were notified of the agreement" where the party "did not offer the declaration of anyone who was actually present" when the employee signed the agreement while acknowledging other documents). However, even Villafranca's account presents only low levels of procedural unconscionability, especially given that the Pay and Privacy Agreement is clearly labeled and explains what it is. Thus, although there are elements of procedural unconscionability for Cruz and

Villanfranca, procedural unconscionability is not high overall.

Although each of these instances demonstrate at least some levels of procedural conscionability, because the Court finds no substantive unconscionability for either the Two Roads Agreement or the Pay and Privacy Agreement, the Court finds that the arbitration agreements are not unconscionable and therefore the Court will not invalidate them. Thus, since both the Two Roads Agreement and the Pay and Privacy Agreement are valid, the Motion to Compel the Arbitration Plaintiffs to Arbitration is **GRANTED**. Mata, Malete, Cruz and Villafranca are hereby compelled to arbitrate their claims in this action.

**e. Dismissal of Class Action Claims**

Defendant further moves to dismiss the class action claims based first on the valid class action waivers found in the arbitration agreement signed by the Arbitration Plaintiffs and second the idea that Seybold cannot sustain a class. While the Court agrees that the class action claims cannot proceed insofar as they relate to the Arbitration Plaintiffs, the Court will not dismiss the class claims as they relate to Seybold for the reasons discussed below.

**i. Class Action Waivers**

Class action waivers in arbitration agreements are enforceable under the FAA. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 517 (2018) (holding class action waivers in arbitration agreements do not violate the NLRA and must be enforced). The Supreme Court further confirmed that "courts may not allow a contract defense to reshape traditional individualized arbitration by mandating classwide arbitration procedures without the parties' consent." *Id.* at 509; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (holding that the FAA preempts any state laws conditioning the enforceability of arbitration provisions on the availability of class or collective procedures because such rules interfere with the fundamental goal of the FAA, which "is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."). The California Supreme Court similarly held such class action waivers valid. *See Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 360 (2014), abrogated on other grounds by *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022) ("The question is whether a state's refusal to enforce [a class] waiver on grounds of public policy or

unconscionability is preempted by the FAA. We conclude that it is."); *Davtian v. Uber Techs., Inc.*, Case No. 24-cv-5195-CRB, 2024 WL 4861590, at *6 (N.D. Cal. Nov. 4, 2024) (dismissing class claims pursuant to a valid class action waiver contained within arbitration agreement); *Mehmud-Bey v. Luxottica of Am. Inc*., Case No. 2:24-cv-04605-FWSMAA, 2024 WL 4818800, at *6-7 (E.D. Cal. Oct. 21, 2024) (finding class action waiver contained in arbitration agreement is enforceable and dismissing plaintiff's class claims). Thus, the class action waivers in both the Two Roads Agreement and the Pay and Privacy Agreement are valid and prevent the Arbitration Plaintiffs from representing a class. Dkt. 22-1 at 8, 17, 22, 27.

**ii. The Record Is Not Developed Enough to Decide Whether Seybold Can Maintain a Class Action**

Defendant's Motion states that, "after compelling Plaintiffs' individual claims to arbitration, this Court must dismiss Plaintiffs' class allegations without prejudice." Dkt. 22 at 28. In response, Plaintiff argues that, "[b]ecause Seybold's claims cannot be compelled to arbitration, h[is] class claims unquestionably survive this motion regardless of the outcome with respect to the claims of other named plaintiffs." For the first time in its Reply, Defendants argue that Seybold cannot maintain a class because "Hyatt has required mandatory arbitration as a condition of employment" "[s]ince October 2023." Dkt. 28 at 21 (citing Buenrostro Decl. at ¶¶ 12, 21-21, Exs. B-E, p. 1).

A plaintiff who did not sign an arbitration agreement cannot represent class members who are subject to an arbitration agreement. *See, e.g., O'Connor v. Uber Technologies*, 904 F.3d 1087, 1093-1094 (9th Cir. 2018) (rejecting argument that named plaintiff that had opted out of arbitration agreement could represent Rule 23 class that included class members who were subject to arbitration agreement). In some instances, courts in this District have found that a plaintiff in such a position lacked typicality and adequacy to represent such a class. *Farr v. Acima Credit LLC*, 2021 WL 2826709, at *6-7 (N.D. Cal. July 7, 2021). The Court has "broad discretion to control the class certification process" and can choose whether to allow discovery before making this determination. *Vinole v. Countrywide Home Loans, Inc.,* 571 F.3d 935, 942 (9th Cir. 2009).

Whether a plaintiff who did not sign an arbitration agreement "is an adequate class

representative for those who did, and all other matters pertaining to whether the action is appropriate for class treatment, are issues for the trial court to decide when [the plaintiff] moves to certify the class." *Lee v. S. Cal. Univ. for Prof'l Studies*, 148 Cal. App. 4th 782, 784 (2007); *see also Heredia v. Sunrise Senior Living LLC*, 2021 WL 61-4188 (C.D. Cal. 2021) (acknowledging that a plaintiff who did not sign arbitration agreement could potentially represent a class comprised of others who did not sign or had otherwise opted out of arbitration agreements).

On the record now before the Court, it is possible that there are other individuals who may still be qualified to bring claims against Defendant, like Seybold. Specifically, Defendant has not adequately developed the record regarding issues relevant to class certification or even the validity of arbitration agreements applicable to others. Aside from the analysis of the specific arbitration agreements signed by the Arbitration Plaintiffs, all Defendant offers is that Hyatt has required mandatory arbitration as a condition of employment since October 2023. Buenrostro Decl. at ¶¶ 12, 21-21, Exs. B-D, p. 1. The Court declines to dismiss the class claims wholesale on an incomplete record. Thus, while the Court hereby **DISMISSES** the Arbitration Plaintiffs from this case, Defendant's Motion to Dismiss the class claims is **DENIED**. Seybold may continue to litigate on behalf of the proposed class, at least until such time as the Court has adequate information to determine the positions of the other members of the proposed class.

## IV. CONCLUSION

Defendant's Motion to Compel Arbitration as to Mata, Cruz, Malte, and Villafranca is hereby **GRANTED**. These Plaintiffs are dismissed from this case. Defendant's Motion to Dismiss the Class Claims is hereby **DENIED**.

**SO ORDERED.**

Dated: October 22, 2026

SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California